IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFREY R. LINSCOTT and JL AVIATION, )
INCORPORATED, an Oregon corporation, )
                                                )
        Plaintiffs,                 )   Case No. CV05-682-HU
                                                )
   vs.                                 )   OPINION AND ORDER
                                                )
VECTOR AEROSPACE, a Canadian      )
corporation; ACROHELIPRO GLOBAL    )
SERVICES USA, INC., a Washington )
corporation; and ACROHELIPRO GLOBAL )
SERVICES INCORPORATED, f/k/a ACRO )
AEROSPACE INCORPORATED, a Canadian )
corporation,                     )
        Defendants.             )

Michael B. Mendelson
Law Offices of Michael B. Mendelson
888 S.W. Fifth Avenue, Suite 650
Portland, Oregon 97204
    Attorney for Plaintiff

James M. Finn
Michael D. Furlong
Schwabe, Williamson & Wyatt
1211 S.W. Fifth Avenue, Suite 1900
Portland, Oregon 97204
    Attorneys for defendants

///

Opinion and Order page 1

HUBEL, Magistrate Judge:

This is a contract dispute centered on a helicopter engine turbine module. Plaintiffs' Amended Complaint alleges that defendant Acrohelipro Global Services, Inc. (ACRO) failed properly to overhaul plaintiff Jeffrey Linscott's helicopter engine turbine module (turbine), which was being used by his company, plaintiff JL Aviation, Inc. (JLA) Defendants have counterclaimed for amounts they claim JLA owes in connection with materials and services ACRO provided to JLA, including the cost of overhauling the turbine.

Linscott is a Major in the Air Force Reserve, and was ordered to serve a six month tour of active duty in Mississippi, commencing December 5, 2002. The tour was later extended to July 31, 2003.

Defendants move for partial summary judgment in their favor against plaintiffs' Second Claim for Relief, for violation of § 527 of the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. Appx. § 527.[1] The basis for the motion is that plaintiffs failed to comply with the statutory requirement that the servicemember provide a creditor with copies of his military orders within 180 days after termination or release from service.

### Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

[1] A previous version of the statute, § 526 of the Soldiers and Sailors Civil Relief Act (SSCRA), 50 U.S.C. Appx. § 526, was superseded in 2003 by § 527 of the Servicemembers Civil Relief Act (SCRA). Plaintiffs concede that the applicable statute is § 527.

Opinion and Order page 2

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### Discussion

Section 527 provides,

> An obligation or liability bearing interest at a rate in excess of 6 percent per year that is incurred by a servicemember ... before the servicemember enters military service shall not bear interest at a rate in excess of 6 percent per year during the period of military service.

§ 527(a)(1). However, to obtain the benefit of this interest rate limitation, the servicemember

> shall provide to the creditor written notice and a copy of the military orders calling the servicemember to military service and any other orders further extending military service, not later than 180 days after the date of the servicemember's termination or release from military service.

Id. at (b)(1). Section 527 applies retroactively to any case that is not final before December 19, 2003.

ACRO contends that plaintiffs cannot prevail on their § 527 claim because they have not demonstrated that they, or their agents, ever sent ACRO a copy of Linscott's military orders or extended orders, as required to obtain relief under the statute.

Defendants previously addressed this issue in their Motion to Dismiss. In the original complaint, plaintiffs alleged that "Linscott ... sent the ACRO defendants a copy of his orders and advised them they were in violation of the SSCRA...." Complaint ¶ 4.9. Defendants moved to dismiss plaintiffs' Second Claim for relief, based on the plaintiffs' failure to allege with specificity whether the orders were sent within the required time limits of §

Opinion and Order page 3

527. In its ruling on the motion, the court granted plaintiffs leave to amend the complaint "to allege, if they can in good faith, that Linscott provided defendants with written notice and a copy of his military orders within the 180 days after his release from military service."

When plaintiffs filed their Amended Complaint, plaintiffs again failed to allege whether they sent the orders within the time limits imposed by § 527. The Amended Complaint alleged, "[T]he ACRO defendants were fully advised of Linscott's active duty status and the provisions of the SSCRA and had been tendered a copy of Linscott's orders." Amended Complaint ¶ 4.9.

Plaintiffs now acknowledge that on July 16, 2003, while Linscott was on active duty, JLA's counsel, Bill Lewis, *offered* to send ACRO a copy of Linscott's extended orders if ACRO would send JLA its fax number. See Declaration of Cathy Coates in Support of Defendant's Motion for Partial Summary Judgment, Exhibit 2. Plaintiffs contend that ACRO never sent JLA's counsel the fax number, so JLA never sent the copy of the orders to ACRO. ACRO contends that four hours after JLA's counsel sent the e-mail offering to send a copy of the orders, the cash manager for ACRO responded with an e-mail containing the fax number. In any event, there is no evidence that a copy of Linscott's orders was ever received by ACRO. Linscott did send ACRO a handwritten note saying, "The Soldier's Sailor Relief Act [sic] letter will follow..." Coates Declaration, Exhibit 1. However, according to ACRO, Linscott never sent the promised letter. Coates Declaration ¶ 9. Linscott

Opinion and Order page 4

has testified that he believes he sent a copy of his orders to ACRO, but has been unable to find any documentation which supports that belief.

Defendants argue that JLA's conduct fails to satisfy its obligations under § 527 for three reasons. First, the burden is on the plaintiffs to send the orders ("the servicemember shall provide to the creditor..."). The statute does not require the creditor to ask for the orders. Second, JLA's counsel's offer referred only to Linscott's *extended* orders. Section 527 requires the servicemember to send a copy of the "military orders calling the servicemember to military service *and* any orders further extending military service...." (emphasis added). Third, as noted, there is no evidence that JLA sent either a copy of Linscott's orders or the orders extending his service to ACRO.

Defendants contend that because plaintiffs failed to send the orders as required under the statute, they fail to qualify for the protection of § 527, and defendants are entitled to summary judgment on the Second Claim.

Plaintiffs argue that, in light of the judicial policy of construing the SSCRA liberally in favor of the military person, see, e.g., LeMaistre v. Leffers, 333 U.S. 1, 6 (1948)(SSCRA should be read with "an eye friendly to those who dropped their affairs to answer their country's call"), the court should allow the servicemember the protections of the statute upon a showing of substantial compliance with the requirement that copies of the orders be sent within 180 days, especially since Linscott's service

Opinion and Order page 5

straddled the transition period between § 526 and § 527. Plaintiffs point out that § 527(b)(1) was not yet in existence while Linscott was on active duty, and did not take effect until he had been off active duty for over four months.[2] Plaintiffs contend that the court should allow Linscott to show "substantial compliance" with the 180 day requirement "during the transition period."

As support for their "substantial compliance" argument, plaintiffs argue that Congress "anticipated that any time limit on a servicemember's right to request a reduction in interest rates could have harsh consequences" and intended to mitigate those consequences by requiring, in § 515 of the Act, that the Secretary of Defense notify servicemembers and people entering the armed services of the protections and obligations of the Act. Plaintiffs cite from the following legislative history:

> The original section provided no guidance on how the servicemember should initiate an interest rate reduction. The Committee believes the burden should be on the servicemember to inform the creditor of the order for military service within a specific time. ... The servicemember would be required to submit to the creditor written notice and a copy of military orders. These orders indicate the period of time for which the servicemember is called to duty. If there is an extension of the military duty obligation, the servicemember receives amended orders and would be required to provide the amended orders to the creditor in order to extend further the 6 percent protection. The Committee notes that, while the section would allow for notice to the creditor of up to 180 days after the servicemember's termination or release from military service, it would obviously be of advantage to servicemembers to provide

---

[2] Linscott went off active duty at the end of July 2003 and § 527 went into effect in mid-December 2003.

Opinion and Order page 6

> notice to creditors more quickly so that their monthly payments are reduced during the period of military service when their income may be reduced.
>
> The Committee expects that the written notice by the Secretary concerned to the servicemembers and persons about to enter military service ... regarding the protections of the Act, would include specific information concerning the reduction in the interest rate and the responsibility of the servicemember to provide notice of military service to the creditor.

148 Cong. Rec. 2367 (2003).

Plaintiffs quote the second paragraph of this legislative history as support for their argument that § 515 of the Act, requiring the Secretary to notify servicemembers and persons about to enter military service about the protections of the Act, including "the responsibility of the servicemember to provide notice of military service to the creditor," qualifies the notification requirements of § 527(b)(1). In other words, implementation of the 180-day deadline for notifying creditors was intended to be mitigated by the § 515 requirement that the Secretary provide notice to servicemembers of "benefits accorded by this Act" and the servicemember's responsibility to provide "notice of military service to the creditor."

Plaintiffs argue that Linscott did not benefit from this intended mitigation because the requirement of written notice from the Secretary is limited to servicemembers and persons *about to* enter military service, and is not available to servicemembers who, like Linscott, had already left the military when the SCRA was enacted. Thus, Linscott was never advised by the Secretary of the new notification requirements of § 527. Under such circumstances,

Opinion and Order page 7

plaintiffs argue, the 180-day notification requirement should not be given full effect and substantial compliance with the notice requirement should be deemed sufficient.

To show substantial compliance, plaintiffs point to the following facts: Linscott's attorney offered to provide ACRO a copy of Linscott's extended orders; ACRO knew Linscott was on active duty, even if it did not have a copy of his orders; ACRO does not contend that it needed the orders to determine whether Linscott was entitled to the protections of the statute; and ACRO does not claim it was prejudiced by not receiving a copy of Linscott's orders.

Defendants counter that nothing in the statute explicitly conditions the requirement that the servicemember send a copy of his military orders to his creditors on the Secretary's notification to the servicemember that the requirement existed. Defendants argue that ignorance of the law is not a defense. Moreover, the statute explicitly says that the burden is on the servicemember to comply with the statute, and the legislative history quoted above shows that Congress intended the 180 day limit to be strictly enforced. Plaintiffs concede that the legislative history of the Act indicates that Congress intended the 180-day time limit to be strictly enforced and that Congress placed the burden on the servicemember to give the statutory notice.

I do not find plaintiffs' argument for substantial compliance persuasive. First, no provision in the SSCRA permits the court to excuse the servicemember from providing a copy of his orders to a creditor on the basis of "substantial compliance," and I decline to

Opinion and Order page 8

rewrite the statute Congress passed. Second, even if the court were empowered to consider substantial compliance, Linscott did not substantially comply with the statutory requirement. The record before the court shows only that Linscott and his counsel made unfulfilled promises to send ACRO either a copy of Linscott's orders or a "Soldier's Sailor Relief Act letter." Linscott knew at the time he left active duty on July 31, 2003 that he intended to invoke the protections of the SSCRA in the dispute with ACRO. Section 527 went into effect in December 2003. Plaintiffs were represented by counsel at the time Linscott left active duty, in July 2003, and at the time this action was filed, on May 13, 2005. Despite the fact that the notification to creditors requirement of the SSCRA has been in effect for almost four years, Linscott has yet to send ACRO a copy of his orders. This conduct does not constitute substantial compliance with the notification requirement.

## Conclusion

Defendants' motion for partial summary judgment (doc. # 62) on the Second Claim for Relief is GRANTED.

IT IS SO ORDERED.

Dated this 27th day of July, 2007.

_____
Dennis James Hubel
United States Magistrate Judge

Opinion and Order Page 9